Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Hutchison & Steffen, LLC
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Telephone:      702.385.2500
Facsimile:      702.385.2086
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com

Michael Dockterman (*pro hac vice to be filed*)
Tanya H. Miari (*pro hac vice to be filed*)
Locke Lord LLP
225 West Wacker Drive, Suite 3000
Chicago, IL  60606
Telephone:      312.201.2000
Facsimile:      312.201.2555
michael.dockterman@lockelord.com
tanya.miari@lockelord.com

*Attorneys for Defendants*
*Toyota Motor Sales USA, Inc., Saatchi & Saatchi*
*North America, Inc., and Smuggler, Inc.*

United States District Court

District of Nevada

| | |
|---|---|
| Eric E. Dahl,<br><br>              Plaintiff,<br><br>v.<br><br>Toyota Motor Sales USA, Inc., Saatchi &<br>Saatchi North America, Inc., Smuggler,<br>Inc., Does I through X, and Roe<br>Corporations I through X, inclusive,<br><br>              Defendants. | Case No.  2:14-cv-01737-JCM-(PAL)<br><br><br>**DEFENDANTS' MOTION TO DISMISS<br>PLAINTIFF'S COMPLAINT PURSUANT<br>TO FED. R. CIV. P. 12(b)(6)** |

LOCKE LORD LLP
ATTORNEYS AT LAW
CHICAGO

AM 44388527.5

# POINTS AND AUTHORITIES

Defendants Toyota Motor Sales USA, Inc., Saatchi & Saatchi North America, Inc., and Smuggler, Inc. (collectively, "Defendants") hereby move to dismiss the complaint of Plaintiff Eric E. Dahl ("Plaintiff" or "Mr. Dahl") pursuant to Fed. R. Civ. P. 12(b)(6), and submit the following Points and Authorities in support of their Motion.

## PRELIMINARY STATEMENT

In his Complaint, Mr. Dahl asserts one claim of copyright infringement and one claim for attorneys' fees and costs incurred as a result of the alleged infringement against all Defendants, claiming that Defendants infringed his copyright in a book titled "B.B. King's Lucille and the Loves Before Her" ("the Book").  Mr. Dahl's self-published book recounts, in part, Plaintiff's real-life experience locating a stolen guitar in a pawn shop and returning it to Mr. King, its rightful owner.  Mr. Dahl asserts that because a young woman in Defendants' 2015 Toyota Camry television commercial ("the Ad") finds a guitar that had been left in a storage room which turns out to have originally belonged to  Mr. King, the Ad is based upon "Plaintiff's story" (Compl., ¶ 12.)  Mr. Dahl's claims fail as a matter of law.

It is a fundamental tenet of copyright law that copyright protection is only afforded to an artist's original, creative expression.  Copyright does not protect facts, ideas, systems, methods of operation, and/or any expression that is not original to the author.  But that is precisely what Plaintiff seeks to do here.  Whatever protection the Book may have under the Copyright Act is limited to Mr. Dahl's expression of the story told in the work.  Fatal to his claim, Mr. Dahl conflates the concept of the expression of the story (protectable) with the basic idea of the story (not protectable).  The concept of a musician who loses a musical instrument which is later found and returned is not unique to Plaintiff nor can he claim copyright protection over all such stories.  Nor does the fact that the musician in both stories is Mr. King change that result; as a matter of law, Plaintiff must point to the expression of his own story in the Ad, not some common facts, to make out a claim.

In fact, the Book is not substantially similar to the allegedly infringing Ad.  Indeed, the Plaintiff is unable to point to any similar language or common expression between the works.

LOCKE LORD LLP
ATTORNEYS AT LAW
CHICAGO
AM 44388527.5

1   Rather, Plaintiff's entire claim relies upon the abstract, common ideas of finding a guitar, locating

2   the owner, returning the guitar, and receiving a token of gratitude from the owner.  (Compl. ¶ 11.)

3   In other words, any similarities exist at only the most abstract, unprotectable level and thus, are

4   not actionable.  Plaintiff has thus failed to state any claim upon which relief can be granted, and

5   therefore, Mr. Dahl's claims must be dismissed.

6   **STATEMENT OF FACTS**

7            As set forth in the Plaintiff's Complaint, Mr. Dahl alleges ownership of the Book, and

8   further alleges that the Book was registered with the United States Copyright Office under

9   Registration No. TX-7-912-552.[1]  For the purposes of this action, Dahl focuses on (but does not

10  provide copies of) "Chapters 25, 26, and 27" of the Book.  (Compl. ¶¶ 9, 11.)  Attached hereto as

11  Exhibit A is a true and correct copy of Chapters 25, 26, and 27 of the Book.  Similarly, Dahl

12  describes, but does not provide, a copy of the Ad at issue.  A video of the Ad is being filed with

13  the Court manually pursuant to Special Order 109, and will be referred to herein as Exhibit B.

14  Exhibit B is a CD of a true and correct copy of the Ad.[2]

15           Chapters 25, 26, and 27 of the Book recount Mr. Dahl's real-life experience.  Dahl, who is

16  admittedly a "frequenter of pawn shops," would regularly visit the many pawn shops in Las

17  Vegas to locate music equipment.  *See* Exhibit A, Chapter 25.  Dahl describes an occasion in

18  2009 when he received a telephone call from a pawn broker who "called to let [him] know that a

19  Gibson Lucille [guitar] was coming" in case Dahl was interested in potentially purchasing the

20  item.  *Id.*  Dahl visited the pawn shop the next day to see the guitar.  *Id.*  The guitar had "a big

21  '80' inlayed [on the headstock]" instead of the standard Lucille logo, and the word "'Prototype

22  #1' stamped in white ink at the top of the headstock."  *Id.*  Dahl purchased the guitar and began to

23  search for more information about its origins.  *See* Exhibit A, Chapters 25-26.  After more than

24  two months of searching, Mr. Dahl says that he received a call from an individual at Gibson

---

[1] Dahl neglects to attach evidence of his U.S. Copyright Registration to the Complaint, nor does he provide a copy of the deposit submitted to the U.S. Copyright Office.

[2] Ninth Circuit law permits the Court to consider documents not specifically incorporated by reference if the "plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."  *Kneivel v. ESPN*, 393, F.3d 1068, 1076 (9th Cir. 2005).

[Guitar Corporation], who advised Dahl that the guitar was in fact B.B. King's personal Lucille, that it was stolen, and that Mr. King would really like it back.  *See* Exhibit A, Chapter 26.  A meeting was subsequently arranged between Mr. Dahl and Mr. King, where Dahl returned the guitar to its owner.  *See* Exhibit A, Chapters 26-27.  In exchange, Mr. Dahl received a different, autographed, guitar from Mr. King.  *See* Exhibit A, Chapter 27.

The Ad at issue is a 2015 Toyota Camry commercial, which is part of a larger "Bold" campaign.  (Compl. ¶ 10.)  The Ad features a female protagonist and is set in the countryside.  *See* Exhibit B.  The woman visits an auction and on a whim, buys a storage locker.  *Id.*  She unexpectedly finds an old guitar in the locker, which bears the name "Lucille" on the headstock.  *Id.*  She tracks down the previous owner, B.B. King, arrives at one of his concerts, and waits backstage to reunite him with the guitar.  *Id.*  Upon seeing his old guitar, Mr. King smiles and autographs it for her, and gives it back to the surprised protagonist, while the voiceover declares, "hit the jackpot."  *Id.*  As the commercial fades out, viewers hear the overarching theme of the commercial and the larger campaign, "The Bold New Camry.  One bold choice leads to another."  *Id.*

A simple Google search reveals that stories involving a famous musician losing his favorite instrument, the instrument being found, and the finder returning the instrument to the musician, are well-documented in the music industry.  Several well-known musicians have lost guitars, while others have lost different instruments.  (*See* Declaration of Tanya H. Miari ("Miari Decl.") ¶ 2(a) and Exhibit 1 thereto.)[3]

////

////

////

---

[3]  A court may consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment.  *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted); Fed. R. Evid. 201(permitting a court to take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").  In the context of copyright claims, the Court may take judicial notice of generic elements of creative works.  *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1129 (C.D. Cal 2007) (citations omitted); *See also Conn. Comty. Bank v. Bank of Greenwich*, 578 F. Supp. 2d 405 (D. Conn. 2008)(taking judicial notice of Google search results).

1

**ARGUMENT**

2   **A.**    **LEGAL STANDARD ON MOTION TO DISMISS**

3      To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide facts sufficient to

4 "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545

5 (2007).  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the

6 elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,

7 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp.* at 555).  A court is not required to

8 accept as true allegations that are merely conclusory, unwarranted deductions of fact.  *Bell Atl.*

9 *Corp.* 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d

10 209 (1986)); *Liguori v. Hansen*, 2012 U.S. Dist. LEXIS 31608 at *2 (D. Nev., March 9, 2012).

11      To establish a successful copyright claim, a plaintiff must show: "(1) his ownership of the

12 copyright; (2) the defendant's access to his work; and (3) 'substantial similarity' between the

13 defendant's work and his own." *Berkic v. Crichton*, 761 F.2d 1289, 1291-92 (9th Cir. 1985).  A

14 plaintiff's failure to establish any one of these three elements is fatal to the complaint.  *Funky*

15 *Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1081 (9th Cir. 2006) (affirming

16 summary judgment on issue of substantial similarity).

17      Courts may determine as a matter of law that works are not substantially similar. *Funky*

18 *Films*, 462 F.3d at 1076-77.  If the court concludes that the contested work is not substantially

19 similar to the protectable elements in the plaintiff's work, dismissal on the pleadings is

20 appropriate.  *See id.*; *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130-31 (C.D. Cal 2007)

21 (citations omitted).

22      Here, the works at issue are identified in the Complaint, and actual copies are attached to

23 this Memorandum.  Thus, the Court may determine as a matter of law that the Ad is not

24 substantially similar to any protectable elements of the Book.

25   **B.**    **DETERMINING COPYRIGHT INFRINGEMENT**

26      To state a claim for copyright infringement, Plaintiff must allege: "(1) ownership of a

27 valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*

28 *Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  "Copying" as used in the second

element requires the Plaintiff to allege that "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). For purposes of this Motion, Defendants stipulate to Dahl's ownership of the Book; the thrust of this Motion turns on the second element of the claim: "copying."

### 1. Access

Plaintiff has utterly failed to plead that the Defendants had access to the Book. *Cavalier* 297 F.3d at 822. Plaintiff alleges that "representatives of Gibson [Guitar Corporation]. . . communicated to the Plaintiff that the Ad was, in fact, based upon *Plaintiff's story*." (Compl. ¶ 12)(emphasis added).[4] Plaintiff then attempts to make the leap that "as a result the defendants had access to the [2009] story as related in the [2013] Book." (Compl. ¶ 12.) Not only does this allegation fail to plead access on its face, but there is no legal basis for making this inference from any other facts in the Complaint. Plaintiff's 2009 story is a *factual* event, widely reported on numerous websites, and even blogged about by the Plaintiff *himself*. (*See* Miari Decl. ¶ 2(b) and Exhibit 2 thereto.) Plaintiff again confuses his real-life story (not protectable) with the expression of the story in his Book (protectable). As discussed further below, Plaintiff cannot claim copyright protection for actual real life events, the details of which are commonly available in the public domain.

### 2. Substantial Similarity

Even if access is present – and Defendants deny this – Plaintiff cannot state a claim if substantial similarity is lacking. *Krofft Tele. Prods, v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) ("No amount of proof of access will suffice to show copying if there are no similarities.") *superseded on other ground by* 17 U.S.C. § 504(b); *Funky Films* 462 F.3d at 1082 (*quoting* same). If similarity between the Ad and the protectable elements of the Book is not found, dismissal is required. *See Zella*, 529 F. Supp. 2d at 1133.

The Ninth Circuit has traditionally determined whether copying sufficient to constitute

---

[4] Defendants deny that anyone from Gibson told Mr. Dahl that the Ad was based on his story but, solely for purposes of this Motion, treat the allegation as if it were true.

infringement has taken place under a two-part test having "extrinsic" and "intrinsic" components. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994); *Krofft Tele. Prods*, 562 F.2d at 1164.  To assess substantial similarity as a matter of law, the Court must apply the objective "extrinsic text."  *Funky Films*, 462 F.3d at 1077.  The extrinsic test focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and the sequence of events of the two works." *Id.* (quotation marks and citation omitted).  "In applying the extrinsic test, this court compares, *not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events* and the relationships between the major characters." *Id.* (emphasis added)(quotation marks and citation omitted).  The Court must take care to inquire only whether the *protectable elements, standing alone*, are substantially similar." *Funky Films*, 462 F.3d at 1077 (*quoting Cavalier*, 297 F.3d at 822)(emphasis in original).  The protectable elements must demonstrate "not just 'similarity,' but 'substantial similarity,' and it must be measured at the level of the concrete 'elements' of each work, rather than at the level of the basic 'idea,' or 'story' that it conveys." *Zella*, 529 F. Supp. 2d at 1133 *citing Idema v. DreamWorks, Inc.*, 162 F. Supp. 2d 1129, 1179 (CD. Cal 2001).  "Similarities derived from the use of common ideas cannot be protected; otherwise the first to come up with an idea will corner the market." *Apple Computer*, 35 F.3d at 1443.  "No one can own the basic idea for a story.  General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind." *Berkic*, 761 F.2d at 1293.  Familiar stock scenes and themes that are staples of literature are not protected.[5]  *Id.* at 1294.

Thus, as a threshold matter, the extent of Mr. Dahl's copyright protection in the Book must be determined by focusing on the concrete "elements" of the work and filtering out the basic "idea" or "story" that it conveys.  *See Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990);

---

[5] *See, e.g.*, *Funky Films*, 462 F.3d at 1081 (finding no protection for similar plots involving "the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business."); *Kouf v. Walt Disney Pictures & Tele.*, 16 F.3d 1042, 1044-45 (9th Cir. 1994) (finding no protection for similar plots of shrunken kids and the "life struggle of kids fighting insurmountable dangers"); *Berkic*, 761 F.2d at 1293 (finding no protection for similar plots of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" and the general store of the "adventures of a young professional who courageously investigates and finally exposes, the criminal organization.")

1    *Apple Computer*, 35 F.3d at 1443.  "[T]he court must then apply the relevant limiting doctrines

2    [such as the "*scènes a faire*" doctrine] in the context of the particular medium involved, through

3    the eyes of the ordinary consumer of that product."  *Apple Computer*, 35 F.3d at 1443-44.

4    Finally, "having dissected the alleged similarities and considered the range of possible

5    expression, the court must define the scope of the plaintiff's copyright – that is, decide whether

6    the work is entitled to 'broad' or 'thin' protection."  *Id.* at 1443.  This "scope of protection" sets

7    the appropriate standard for a subjective comparison of the works to determine whether, as a

8    whole, they are sufficiently similar to support a finding of illicit copying.  *See id.*

9         Here, there is one point of similarity:  the instrument is one of B.B. King's guitars.  Mr.

10   Dahl concludes that because the woman in the Ad finds *that* artist's guitar – regardless of the

11   circumstances or the process or the other characters involved – the Ad infringes the Book.  But

12   the actual, concrete, elements of the story are quite different:  the woman embarks on her quest on

13   a whim rather than as an habitué; she finds the guitar by accident rather than by following a tip

14   from a merchant; she discovers the guitar in a storage locker rather than being directed to the

15   instrument in a pawn shop; she has no idea who left the guitar while Mr. Dahl went to the pawn

16   shop because he had been told there was a Lucille guitar available ; the guitar in the storage

17   locker bears the name "Lucille" on the headstock while the guitar purchased by Mr. Dahl bore a

18   big "80" on the headstock instead of the standard "Lucille" logo; the woman is surprised to find

19   the guitar belongs to an artist while Mr. Dahl's encounter with Mr. King is portrayed as the result

20   of a long obsession with musical equipment; no one knows why the instrument was in the storage

21   locker while Mr. Dahl tells of a stolen guitar for which Mr. King yearns; the woman waits

22   backstage to surprise the artist, who gives her back the guitar in question, while Mr. Dahl's

23   encounter is arranged over a period of weeks, and actually results in the return of the guitar to Mr.

24   King.  There is no denying that Mr. King signed on to be paid to perform in the Ad when solicited

25   by Defendants, but that also is quite different from his actual meeting, gratis, with Mr. Dahl.  The

26   fact that he appears with one of his guitars in both places does not make the Ad an infringement

27   of Mr. Dahl's Book.

28   ////

LOCKE LORD LLP
ATTORNEYS AT LAW
CHICAGO

AM 44388527.5

**C.     THE BOOK HAS LIMITED PROTECTION UNDER THE COPYRIGHT ACT**

**Ideas.**  It is axiomatic that ideas, as opposed to the author's original expression thereof, are excluded from the substantial similarity analysis.  *See* 17 U.S.C. § 102(b) (Copyright Act does not protect ideas); *Feist*, 499 U.S. at 350; *Mazer v. Stein*, 347 U.S. 201, 217 (1954); *Krofft Tele. Prods,* 562 F.2d at 1163.  Certain forms of literary expression are *not* protected against copying; the general idea for a story is among these.  *Berkic* 761 F.2d at 1293.  Here, Mr. Dahl cannot claim copyright protection in the *idea* of a story about a lost or stolen guitar which is returned to its owner (in contrast to the story in the Ad, where the owner of the guitar autographs it and gives it back to the finder).  To allow protection for such general concepts or ideas would be to seize those ideas from the public domain and render them unavailable for exploitation for the duration of the copyright, which is precisely what the doctrine underlying the idea-expression dichotomy aims to prevent.  *See id.* at 1293-94.

**Scènes a Faire.**  Moreover, copyright protection does not extend to "*scènes a faire*" which are "situations and incidents that flow necessarily or naturally from a basic plot premise." *Cavalier*, 297 F.3d at 823; *See also Berkic* 761 F.2d at 1293.  The common use of familiar scenes and themes cannot raise a triable issue of fact on a plaintiff's copyright claim.  *Berkic* 761 F.2d at 1294.  *See, e.g.*, *Flynn v. Surnow*, 70 U.S.P.Q.2d 1231, 1237 (C.D. Cal. 2003) (finding that the use of a sniper rifle by an assassin was "an example of a scene a faire which flows naturally from a plot about an assassination attempt");  *Zella*, 529 F. Supp. 2d  at 1129 (finding "stock elements of a host, guest celebrities, an interview and a cooking segment" to be *scenes a faire* of a cooking-and-home-related talk show); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1177 (9th Cir. 2003) (finding that "the sequencing of first performing [a magic] trick and then revealing the secrets behind the trick is subject to the limiting doctrines of merger and *scenes a faire*.").

With respect to the Book, the lost instrument, the original musician owner, the finder of the instrument and the return of the instrument are *scènes a faire* which flow from the common plot about a lost-and-found personal item.  This story is quite common and indeed B.B. King himself nearly lost his first guitar in a fire, which is how the now-famous "Lucille" guitar derived its name.  (*See* Miari Decl.¶ 2(c) and Exhibit 3 thereto.)  This Court should take judicial notice

1    that the storyline of a lost instrument found and returned to its original owner is common and

2    prevalent in public works.[6]

3        **Facts.** Facts are not themselves copyrightable (though original compilations/arrangements

4    of facts may be).  *Feist*, 499 U.S. at 347-48.  "The *sine qua non* of copyrightability is originality.

5    To qualify for copyright protection, a work must be original to the author . . . . Original, as the

6    term is used in copyright, means only that the work was independently created by the author (as

7    opposed to copied from other works), and that it possesses at least some minimal degree of

8    creativity." *Id.* at 345 (citations omitted).  As noted above, for the purposes of this Motion,

9    Defendants do not dispute that the Book contains some modicum of originality and creativity

10   such that it is protectable under copyright.  However, "the mere fact that a work is copyrighted

11   does not mean that every element of the work may be protected . . . copyright protection may

12   extend only to those components of a work that are original to the author." *Id.* at 348.  Here, Mr.

13   Dahl's factual real-life experience is not a protectable element.  The arrangement of the factual

14   encounter, *as expressed in the Book* is the work in which Dahl may claim protection.

15       Based on the foregoing, the Book can only be the subject of limited, thin protection,

16   meaning that only if the contested work is "virtually identical" will it give rise to an infringement

17   claim.  *See Apple Computer*, 35 F.3d at 1446-47.  As shown both above and below, it is plain that

18   the Book and the Ad are *not* substantially similar, much less virtually identical, and thus

19   Plaintiff's claims must fail.

20   **D.    PLAINTIFF CANNOT ESTABLISH SUBSTANTIAL SIMILARITY OF ANY**

21   **PROTECTABLE ELEMENTS**

22       The final task is for the Court to determine whether the protectable elements of the Book

23   and the Ad are substantially similar.  *Funky Films*, 462 F.3d at 1077 (quotations omitted).  Here,

24   this case is particularly well-suited for dismissal on the pleadings, because the Ad does not

25   incorporate *a single protectable element* of the Book.

26       Quite simply, apart from the unprotectable elements described above, Mr. Dahl cannot

27

28   _____

     [6] *See* n. 3, *supra*.

1  identify a single expressive element that can be found in both the Ad and the Book.  The

2  differences can be summarized as follows:

3  •   **Plot**: The Book, specifically Chapters 25, 26, and 27, tells the story of a guitar that was

4      purchased at a pawn shop in Las Vegas and discovered to be B.B. King's personal guitar

5      that had been stolen from him; a fact Mr. Dahl later learns from Gibson Guitar Corp.  A

6      meeting is arranged by a third party, Mr. King's manager, between the purchaser of the

7      guitar and Mr. King at Mr. King's office, where the guitar is returned and the purchaser is

8      given an autographed new guitar in exchange.  The Ad tells the story of a woman who

9      drives a Toyota Camry to an auction and buys a storage locker as a bold move.  A guitar is

10     unexpectedly found in the storage locker.  The woman takes a risk of tracking down the

11     original owner, taking a guitar which bears the name "Lucille" to B.B. King.  She

12     attendshis concert and goes backstage, where she has an impromptu meeting with the

13     artist (Mr. King is not identified in the Ad), he autographs the original guitar and lets her

14     keep it.  The only commonality between the two plots is B.B. King's loss of a guitar

15     which the finder shows him – a factual occurrence for which Plaintiff cannot claim

16     protection.

17  •   **Themes**: Although both works explore the common theme of a lost-and-found instrument,

18     they are quite different.  The chapters at issue in the Book simply have a narrative quality,

19     and recount a factual series of events which began when the Plaintiff made a deliberate

20     decision to buy a guitar.  The Ad has the theme of seizing the day, trying something

21     unexpected and experiencing positive results.  The overarching theme of the campaign for

22     which the Ad was created is the concept of taking a "bold step."

23  •   **Dialogue**: The relevant chapters in the Book mainly contain dialogue between the

24     Plaintiff and Mr. King.  The Ad does not feature any dialogue between the protagonist and

25     a third person, but rather is presented as a narrator's voice over as the woman takes the

26     actions described above.

27  •   **Setting, Mood, and Pace**: Chapters 25, 26 and 27 in the Book take place in Las Vegas,

28     including at a pawn shop and Mr. King's office.  The Ad begins with a woman arriving at

an unknown auction.  It then depicts the storage locker she wins, and shows her driving various places to locate the owner.  The Ad culminates in the woman arriving backstage at a musical venue.  The moods of the two works are also quite different.  The Book is a realistic narrative, while the Ad is an inspirational dramatization of the possible outcomes from taking a "bold step."  The 30-second Ad moves at a much faster pace than the Book. Beyond the basic premise that a lost-and-found instrument belongs to B.B. King, there are no similarities in the setting, mood, or pace of the two works.

- **Characters**: The relevant chapters in the Book involve, mainly, the Plaintiff, Chaz Starr (the pawn shop owner), Pat Foley (an employee of Gibson Guitar Corp.), B.B. King, and various employees of Mr. King.  The Ad involves, mainly, an unidentified woman, and Mr. King.

In short, other than unprotectable ideas, facts, and *scènes a faire*, nothing about the two works at issue is similar.  Thus, Mr. Dahl's claim must be dismissed as a matter of law.

Moreover, even if any of the similar material in both the Book and the Ad *were* copyrightable – and Defendants dispute that it is – such material represents only a *de minimis* amount and is overwhelmed by the vast differences between the works such that the common features do not allow a reasonable inference that the works are substantially similar. *Berkic*, 761 F.2d at 1294.

Mr. Dahl's second and final claim is for attorneys' fees and costs and is necessarily reliant upon the success of Dahl's first claim.  Because Mr. Dahl's claim for copyright infringement must fail, so too, must his claim for attorneys' fees and costs.

////

////

////

LOCKE LORD LLP
ATTORNEYS AT LAW
CHICAGO
AM 44388527.5

**CONCLUSION**

None of the similarities between the Book and the Ad are of protectable elements. Accordingly, the works cannot be found "substantially similar" as a matter of law.  Defendants respectfully submit that their Motion to Dismiss Plaintiff's Complaint be granted, that the Complaint be dismissed with prejudice and without leave to amend, and that judgment be entered in favor of all Defendants.

Respectfully submitted,

Dated: January 15, 2015

By:   /s/ Jacob A. Reynolds
Michael Dockterman
Tanya H. Miari
*Pro hac vice to be filed*
Locke Lord LLP
225 W. Wacker Dr., Suite 3000
Chicago, IL 60606

Mark A. Hutchison (4639)
Jacob A. Reynolds (10199)
Hutchison & Steffen, LLC
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

*Attorneys for Defendants*
*Toyota Motor Sales USA, Inc., Saatchi &*
*Saatchi North America, Inc., and*
*Smuggler, Inc.*

LOCKE LORD LLP
ATTORNEYS AT LAW
CHICAGO

AM 44388527.5

- 13 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of HUTCHISON & STEFFEN, LLC and that on this 15th day of January, 2015, I caused the above and foregoing document entitled **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** to be served electronically by the court to all attorneys or parties on the Service List of the above-entitled matter through NEF pursuant to LR 5-4 and/or:

[   ]   by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage is to be prepaid in Las Vegas, Nevada; and/or

[   ]   to be hand-delivered;

to the attorneys/parties listed below at the address and/or facsimile number indicated below:

Jeffrey L. Galliher (8078)
Dennett Winspear LLP
3301 N. Buffalo Drive, Suite 195
Las Vegas, NV 89129
Telephone: (702) 839-1100
Facsimile: (702) 839-1113

*Attorneys for Plaintiff*
*Eric E. Dahl*

/s/ Jacob A. Reynolds
_____
An employee of Hutchison & Steffen, LLC

LOCKE LORD LLP
ATTORNEYS AT LAW
CHICAGO

AM 44388527.5

- 14 -